IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOEL CHARLES DEFREYTAS, III** : | CIVIL ACTION |
| : | |
| Plaintiff, : | |
| : | NO. 22-5263 |
| v. : | |
| : | |
| **PRIME CARE MEDICAL, INC., et al.,** : | |
| : | |
| Defendants. : | |

**MEMORANDUM OPINION**

**Goldberg, J.**                                                                                                                        **July 12, 2023**

Plaintiff Joel Charles Defreytas, III, acting *pro se*, brings a second action raising claims related to his ninety-day incarceration for drunk driving. Plaintiff's original case named only Defendants Prime Care Medical, Inc., the County of Chester, and Chester County Prison as Defendants. On May 10, 2022, I dismissed all claims against these Defendants. Following several unsuccessful attempts to seek reconsideration, Plaintiff filed the current civil action against PrimeCare Medical, Inc., the County of Chester, and Chester County Prison but also named multiple new Defendants. His claims in the new action also stem from his ninety-day incarceration in Chester County Prison.

Defendants have now filed several motions to dismiss, including: (1) a motion to dismiss by Defendants the County of Chester, the Chester County Prison, Warden Roberts (Deputy Warden of Treatment), Tim Mulrooney (Director of Inmate Services), Elmer Shelton (Counselor), Corrections Officer Pate, and Correction Officer Edmunds (collectively, the "Chester County Defendants"); (2) a motion for judgment on the pleadings by Defendant PrimeCare and Christopher Diaz, PA-C (collectively, the "PrimeCare Defendants"); (3) a motion to dismiss by Defendants Chester County District Attorney's Office and Erik Walschburger (Assistant District Attorney) (collectively, the "D.A.'s Office Defendants"), (4) the Motion for Joinder of the Chester County Sheriff's Office, the Chester

County Drug and Alcohol Department, the Chester County Probation and Parole Department, Rita McGuane (Treatment Court Specialist), Jennifer Wright (Probation and Parole Supervisor) (collectively, the "Sheriff's Office Defendants"); and (5) a motion to dismiss by Judge Anne Marie Wheatcraft. For the following reasons, I will grant all of the Motions in their entirety.

I.  FACTUAL BACKGROUND

The following facts are set forth in the Complaint.[1]

On July 15, 2020, following a third DUI charge, Plaintiff was sentenced to ninety days imprisonment at Chester County Prison with a release date of October 13, 2020, and nine months of house arrest to follow. Plaintiff alleges several claims arising out of this sentence.

First, Plaintiff contends that upon arrival at Chester County Prison, the COVID-19 pandemic was spreading throughout the world and particularly at Chester County Prison. Plaintiff alleges that, as a stage four colon cancer survivor, he is a high-risk individual. Despite informing Defendants of his condition, Defendants were deliberately indifferent to his serious medical needs and he was forced to contract the COVID-19 virus while imprisoned. Although he tested negative on October 12, 2020—one day before his release date—he was sent to quarantine where he contracted the virus when he should have been released. Defendant PrimeCare gave him no treatment. (Compl., ECF No. 1, pp. 12–13.)

Second, Plaintiff claims that his right to medical care was violated because, despite a multitude of impairments caused by treatment for cancer, neither PrimeCare Medical nor Chester County Prison provided him with consistent medication or dietary management. Likewise, Defendants ignored his mental and psychological conditions during imprisonment. (Id. p. 13.)

---

[1]  In deciding a motion under Federal Rule of Civil Procedure 12, the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

Third, Plaintiff alleges a violation of his right to complain about prison conditions and a deprivation of access to the courts. Upon imprisonment, Plaintiff asserts he was assigned a counselor as a point of contact for phone calls to his attorney, but the counselor continuously failed to show up at work and ignored or denied Plaintiff's requests to make phone calls to legal counsel outside of the prison. As a result, Plaintiff claims he was held in Chester County Prison after his scheduled release date of October 13, 2020, until November 13, 2020, with no explanation and no way to contact his lawyer, the courts, his probation officer, or his treatment provider. (Id.)

Fourth, Plaintiff sets forth claims of malicious prosecution, false imprisonment, breach of contract, and negligent and intentional infliction of emotional distress. Plaintiff contends that he was sentenced to participate in the Recovery Court program, and he asked to complete that program while on house arrest due to his medical conditions and the COVID-19 outbreak. The trial judge denied his request, and Plaintiff now contends that this was malicious prosecution resulting in severe emotional distress. (Id. at 14–15.) Ultimately, he was not released from prison until thirty-one days after his agreed-upon release date due to his positive COVID-19 test.

Fifth, Plaintiff brings a claim under the Americans with Disabilities Act ("ADA"), contending that he is disabled but was not given reasonable accommodations in the form of home confinement, in lieu of incarceration, in order to account for his serious medical condition. (Id. at 15.)

Finally, Plaintiff alleges that his right to a speedy trial was violated when the County of Chester took approximately one year from his July 15, 2019 violation date to sentence him, which resulted in his incarceration during the pandemic. (Id. at 16–17.)

### III.   PROCEDURAL HISTORY

Plaintiff previously filed a virtually identical complaint, with many of the same claims, against the Chester County Defendants and Defendant PrimeCare under the caption of Defreytas v. County of Chester, Civil Action No. 21-5553. On May 10, 2022, I dismissed all claims against the Defendants on their merits and ordered the case closed. Plaintiff made numerous additional filings under that case

3

caption. On December 2, 2022, I denied Plaintiff's motions for reconsideration and to amend and directed Plaintiff to not file anything further on that docket.

On December 13, 2022, Plaintiff filed this new Complaint setting forth the above claims. The Chester County Defendants, D.A. Office Defendants, and Sheriff's Office Defendants all filed motions to dismiss. Subsequently, I noted that although the PrimeCare Defendants and Defendant Judge Wheatcraft had been served, they had not filed any type of responsive pleading. As such, I issued an order directing Plaintiff to seek default judgment against them or otherwise face dismissal of those defendants for lack of prosecution. Following the issuance of that order, the PrimeCare Defendants and Judge Wheatcraft filed motions to dismiss. Cognizant that default is a disfavored remedy, I will consider those motions on their merits.

## IV.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and "only a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365.

4

Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Iqbal, 556 U.S. at 679).

A prisoner's *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." U.S. ex rel. Walker v. Fayette Cnty., Pa., 599 F.2d 573, 575 (3d Cir. 1979), (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520. "Yet there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). Thus, even a *pro se* complaint must conform with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertions" that are devoid of "factual enhancement." Iqbal, 556 U.S. at 678 (internal quotations omitted).

IV.   **DISCUSSION**

   A.   **Motion to Dismiss by Chester County Defendants**

The Chester County Defendants contend that Plaintiff's claims against Defendant Chester County[2] are barred by the doctrine of claim preclusion. Claim preclusion, formerly referred to as *res*

---

[2] Plaintiff also raises for the first time claims against Warden Roberts (Deputy Warden of Treatment), Tim Mulrooney (Director of Inmate Services), Elmer Shelton (Counselor), Corrections Officer Pate, and Correction Officer Edmunds. Plaintiff does not specify whether the claims are against these Defendants in their individual or official capacities. To the extent he names these Defendants in their official capacities, the claims against them must be dismissed for the same reasons these claims are dismissed against the County of Chester. Kentucky v. Graham, 473 U.S. 159, 165--66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' . . . [That is because] an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (quotation omitted). To the extent he names these Defendants

*judicata*, bars a claim litigated between the same parties or their privies in earlier litigation where the claim arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation. Reaves v. Pennsylvania Bd. of Prob. & Parole, 580 F. App'x 49, 52 (3d Cir. 2014); Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 276 (3d Cir. 2014). The doctrine bars not only claims that were brought in the previous action, but also claims that could have been brought. Blunt, 767 F.3d at 277 (citations omitted). "A claim extinguished by *res judicata* includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Id. (citations omitted).

"Claim preclusion requires (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their [privies]; and (3) a subsequent suit based on the same cause of action." Id. at 276 (citations omitted). This test should not be applied mechanically but rather should focus on the central purpose of avoiding piecemeal litigation and requiring a plaintiff to present all claims arising out of the same occurrence in a single suit. Id. at 277. The court should take "a broad view of what constitutes the same cause of action" and "*res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." Id. (citations omitted). The analysis does not depend on the specific legal theory invoked. Id.; see also Elkadrawy v. Vanguard Grp., 584 F.3d 169, 173 (3d Cir. 2009) (noting that the focal point of the analysis is whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same).

In the prior case under Civil Action No. 21-5553—brought against, in part, the County of Chester—Plaintiff alleged that he was "subjected to improper housing and lack of medical attention by

---

in their individual capacities, Plaintiff has failed to identify any specific actions taken by the Defendants that violated Plaintiff's civil rights.

Plaintiff also names as a Defendant Chester County Prison. For purposes of Plaintiff's claims, Chester County Prison is not a separate legal entity from Defendant Chester County. See Jackson v. Chester County, No. 07-cv-4463, 2008 WL 1836675, at *4 (E.D. Pa. Apr. 23, 2008). Accordingly, Plaintiff's claims against Chester County Prison will be dismissed.

Chester County Prison being given no medical accommodations for recovery from Colon Cancer as well as no medical bed for treatment of spinal injuries." (Civ. A. No. 21-5553, Am. Compl. ¶ 5.) He also claimed that he was housed improperly in that he had no "plenum barriers, was fed improperly according to medical conditions, and was afforded a cell in general population rather than a medical environment with no privacy to conceal issues associated with treatment of recovery from stage 4 cancer or a spinal operation." (Id. ¶ 6.) Plaintiff asserted that there was no reason to incarcerate him as home confinement would have served the same purpose and would have provided him with a safe health environment due to his conditions. (Id. ¶ 4.) Further, Plaintiff contended that the County of Chester failed to provide any barriers or other safety precautions to adequately protect inmates from COVID-19, and Plaintiff was housed in a cell with an inmate who was known to have the virus. (Id. ¶¶ 9—10.) Finally, Plaintiff asserted that he was kept in a quarantine block for one month after his release date had already passed. (Id. ¶ 11.) In a May 10, 2022 Order, I dismissed all of these claims on their merits.

These claims were based on the identical factual circumstances as those alleged in the present Complaint. Specifically, Plaintiff now asserts that, during his ninety-day sentence, he was improperly incarcerated in lieu of home confinement and then, once incarcerated, was exposed to COVID-19, not properly treated for his medical conditions, and detained beyond his release date. Although the precise contours of his legal claims vary slightly, claim preclusion analysis does not depend on the specific legal theory invoked. The fact remains that the prior suit involved the same parties based on the same underlying events giving rise to the legal claims.

The only potentially new claim is Plaintiff's allegation that he was deprived of his right to complain about prison conditions and have access to the courts because his court-appointed counselor either failed to show up to work or denied Plaintiff's requests to make calls to legal counsel, ultimately resulting in his being held in prison after his scheduled release date. As noted above, however, the claim preclusion doctrine bars not only claims that were brought in the previous action, but also claims that could have been brought regardless of whether they were asserted or determined in the prior proceeding.

7

Blunt, 767 F.3d at 277; see also Brown v. Felsen, 442 U.S. 127, 131 (1979) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."). In the prior action, Plaintiff raised several claims against the Chester County Defendants related to his alleged continued detention after his release date. I dismissed those claims because (a) it was the Commonwealth of Pennsylvania Court System, not the Chester County Defendants that were responsible for Plaintiff's release, and (b) in any event, Plaintiff had not plausibly alleged any deliberate indifference by the Chester County Defendants. Such allegations encompass Plaintiff's current claim that he was unable to protest his continued confinement. Accordingly, I find it barred by the doctrine of claim preclusion.

### B. Motion for Judgment on the Pleadings by the PrimeCare Defendants[3]

The PrimeCare Defendants (PrimeCare Medical and Christopher Diaz) also raise a claim preclusion defense, as well as a statute of limitations defense. [4]

---

[3] The PrimeCare Defendants filed an Answer to the Complaint on April 14, 2023, and, on the same day, filed the current Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). The standard of review under Rule 12(c) is the same as the standard under Rule 12(b)(6).

[4] Plaintiff has filed a motion for entry of default against the PrimeCare Defendants and Defendant Judge Wheatcraft given their failure to timely respond to the Complaint. Entry of default and default judgment are disfavored, as they prevent a plaintiff's claims from being decided on the merits. Thompson v. Mattleman, Greenberg, Shmerelson, Weinroth & Miller, No. 93-cv-2290, 1995 WL 321898, at *3 (E.D. Pa. May 26, 1995). A party is "not entitled to a default judgment as of right," and the court must use "sound judicial discretion" in weighing whether or not to enter a default judgment. Prudential-LMI Commercial Ins. Co. v. Windmere Corp., No. 94-cv-0197, 1995 WL 422794 (E.D. Pa. July 14, 1995) (quoting 10 Wright, Miller & Kane, Fed. Practice & Proc. § 2685 (1983)). Before entering a default judgment, a court should consider: (1) whether the plaintiff will be prejudiced if default is denied; (2) whether the defendant has a meritorious defense; and (3) whether the default was the product of a defendant's culpable conduct. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1995).

Exercising my discretion here, I find that, notwithstanding the belated nature of the motions filed by both the PrimeCare Defendants and Judge Wheatcraft, default is not appropriate for several reasons. Primarily, given the early stages of this case, I do not find that Plaintiff will be prejudiced. Second, as addressed in this Memorandum Opinion, these Defendants have meritorious defenses. Finally, given that this is the second lawsuit by Plaintiff based on the same facts, it is highly likely that these Defendants' failure to respond resulted from some confusion and not from their culpable conduct. Indeed, upon notice that they faced default judgment, these Defendants promptly filed the current motions to dismiss.

With respect to Defendant PrimeCare, I find that claim preclusion applies. In the prior action's Amended Complaint, Plaintiff alleged that he was refused medical attention "likely required dail[y] by Prime Care Medical." (Civ. A. No. 21-5553, Am. Compl. ¶ 7.) Plaintiff also claimed he was "given no medical accommodations for recovery from Colon Cancer as well as no medical bed for treatment of spinal injuries." (Id. ¶ 5.) In addition, Plaintiff contended he was forced to contract COVID and not given proper care. (Id. ¶ 9.) Finally, Plaintiff asserted that he was not afforded access to proper medical care for his colorectal cancer due to PrimeCare's medical policy, and he was declined a furlough to obtain care from a medically approved professional. (Id. ¶ 3.) I dismissed all of these claims on a motion to dismiss, thus resulting in a final judgment on the merits in the prior suit.

The current Complaint raises almost identical claims based on the almost identical facts. Plaintiff contends that PrimeCare was made aware of his medical condition, yet he was not provided the necessary consistent medication and dietary management. In addition, his mental and psychological conditions were not addressed, and he was not permitted to see his own doctors and medical professionals for continued treatment. (Compl., cl. no. 2.) Further, he contends that PrimeCare failed to provide any barriers or safety precautions to protect him from COVID-19, and, once he contracted COVID, he was sent to a quarantine medical block. (Id.) Given the commonality of parties and claims between the two actions, claim preclusion applies.

As to Defendant Christopher Diaz, because he was not named as a defendant in the original action, claim preclusion does not apply. Nonetheless, Plaintiff's claims against him are time barred. Claims under 42 U.S.C. § 1983 are subject to Pennsylvania's two-year state statute of limitations for personal injury actions. Ormsby v. Luzerne Cnty. Dep't of Public Welfare Office of Human Servs., 149 F. App'x 60, 62 (3d Cir. 2005); See 42 Pa. Cons. Stat. § 5524. Federal law governs the accrual date of a § 1983 claim. Wallace v. Kato, 549 U.S. 384, 388 (2007). "[A] claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong."

9

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994), overruled in irrelevant part by Rotkiske v. Klemm, 890 F.3d 422 (3d Cir. 2018).

Here, the Complaint sets forth no allegations regarding Christopher Diaz, making it difficult to ascertain the precise claims against him. Nonetheless, as Diaz is an employee of PrimeCare, and as Plaintiff's claims involve only events occurring between July and November 15, 2020 (when his incarceration in the Chester County Prison ended), it is obvious that Plaintiff's claims against Diaz could have arisen no later than November 2020. Under the statute of limitations, Plaintiff had until November 15, 2022 to initiate suit but did not do so until December 13, 2022, almost one month later. As such, I will dismiss the claims against Diaz as untimely.[5]

### C. Motion to Dismiss by the D.A. Office Defendants

The D.A. Office Defendants—consisting of Chester County District Attorney's Office and Assistant District Attorney Erik Walschburger—also move to dismiss all claims against them.

As to the Chester County District Attorney's Office, it is well established that it is not a "person" capable of being sued under 42 U.S.C. § 1983. See Reitz v. Cnty. of Bucks, 125 F.3d 139, 148 (3d Cir. 1997) ("[T]he Bucks County District Attorney's office is not an entity for purposes of § 1983 liability."); Brock v. Allegheny Cnty. Dist. Attorney Office, No. 12-cv-914, 2013 WL 3989452, at *3 (W.D. Pa. Aug. 2, 2013) ("Defendant, the [Allegheny County District Attorney], may not be sued for violations of § 1983; rather, the proper defendant for suit based upon conduct of the [Allegheny County District Attorney] is Allegheny County."). Accordingly, to the extent the Complaint sets forth a § 1983 claim against the Chester County District Attorney's Office, that claim must be dismissed.

---

[5] To the extent Plaintiff contends that his statute of limitations is tolled by his earlier filed suit in Civil Action No. 21-5553, he is mistaken. As a primary matter, Diaz was not named as a defendant in that suit. Moreover, "[i]t is well-settled that a statute of limitations is generally not tolled by the filing of a complaint that is later *dismissed in its entirety* without prejudice." Blair v. Comprehensive Healthcare Mgmt. Servs., LLC, Nos. 18cv-254, 18-cv-1667, 2021 WL 3855931, at *4 (W.D. Pa. Aug. 27, 2021) (emphasis in original) (citing Brennan v. Kulick, 407 F.3d 603, 606 (3d Cir. 2005)).

As to Defendant Walschburger, Plaintiff posits several claims against him: (1) malicious prosecution, false imprisonment, breach of contract, and negligent and intentional infliction of emotional distress because Plaintiff was sentenced to incarceration to participate in the Recovery Court program in lieu of being given house arrest due to his medical conditions; (2) violation of the Americans with Disabilities Act by failing to offer Plaintiff the reasonable accommodation in the form of home confinement in lieu of prison; and (3) violation of the Speedy Trial Act by taking approximately one year from Plaintiff's July 15, 2019 violation date to sentence him.

As to the claims of malicious prosecution, false imprisonment, and negligent and intentional infliction of emotional distress,[6] Walschburger is entitled to absolute immunity. "Absolute immunity attaches to all actions performed in a 'quasi-judicial' role." Kulwicki v. Dawson, 969 F.2d 1454, 1463 (3d Cir. 1992). "This includes activity taken while in court, such as the presentation of evidence or legal argument, as well as selected out-of-court behavior 'intimately associated with the judicial phases' of litigation." Id. (quotation omitted). "The decision to initiate a prosecution is at the core of the prosecutor's judicial role," and any harm to a falsely-charged defendant is remedied by safeguards built into the judicial system, such as probable cause hearings, dismissal of the charges, as well as state codes of professional responsibility. Id. at 1463--64; see also Imbler v. Pachtman, 424 U.S. 409, 431 (1976) (holding a prosecutor immune from a civil suit based on actions initiating prosecution and presenting the State's case). Because claims related to the prosecution and sentencing of Plaintiff rest on Walschburger's actions performed exclusively in his judicial role, they must be dismissed.

As to the Americans with Disabilities Act ("ADA") claim, it is well established that the ADA does not create private causes of action against individuals. See Emerson v. Thiel College, 296 F.3d 184, 188—89 (3d Cir. 2002) (holding that individual defendants cannot be sued in their individual capacities under the ADA). Thus, Plaintiff may only bring an ADA claim against Walschburger in his

---

[6] Plaintiff also alleges breach of contract but does not indicate what type of contract Walschburger breached.

official capacity, where the true party in interest is the County of Chester. As I have already found that such a claim against the County of Chester is barred by the doctrine of claim preclusion, this iteration of the claim must also be dismissed.

Finally, as to Plaintiff's speedy trial claim, the United States Court of Appeals for the Third Circuit has held that an unconditional guilty plea constitutes a waiver of Speedy Trial Act rights. Washington v. Sobina, 475 F.3d 162, 164 (3d Cir. 2007); see also Henderson v. May, No. 16-cv-5004, 2017 WL 2608246, at *2 (E.D. Pa. May 31, 2017). Because Plaintiff here voluntarily pled guilty to a felony offense of driving under the influence, he waived any speedy trial claim he may have had.

For these reasons, I will grant the D.A. Office Defendants' Motion to Dismiss in its entirety.

### D.   Motion to Dismiss by Sheriff's Office Defendants

The next group of Defendants includes the Chester County Sheriff's Office, the Chester County Drug and Alcohol Department, the Chester County Probation and Parole Department, Rita McGuane (Treatment Court Specialist), and Jennifer Wright (Probation and Parole Supervisor). Although these Sheriff's Office Defendants are also Chester County officials, they were not specifically named as movants in the Chester County Defendants' Motion to Dismiss. As a matter of precaution, the Sheriff's Office Defendants now seek to join in the Motion to Dismiss filed by the Chester County Defendants.

I find that such joinder as proper. The Sheriff's County Defendants are all arms of Chester County, and, like the Chester County District Attorney's Office and Chester County Prison, are not subject to suit separate from the County of Chester itself. As I dismissed all claims against the County of Chester on claim preclusion grounds, I will likewise dismiss all claims against the Sheriff's County Defendants.

### E.   Motion to Dismiss by the Honorable Ann Marie Wheatcraft

The last remaining Defendant is the Honorable Ann Marie Wheatcraft. Plaintiff alleges that he was sentenced to participate in the Recovery Court program, and he asked to complete that program while on house arrest due to his medical conditions and the COVID-19 outbreak. Judge Wheatcraft,

however, denied his request, and Plaintiff now contends that this constituted malicious prosecution and a denial of reasonable accommodations in violation of the ADA.

To the extent Plaintiff sues Judge Wheatcraft in her official capacity it is well established that she is immune from suit under the Eleventh Amendment. The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment presupposes that each state is a sovereign entity in our federal system and that, as a sovereign, it is not amenable to the suit of an individual without its consent. Seminole Tribe of Fl. v. Fl., 517 U.S. 44, 54 (1996). The Eleventh Amendment also extends immunity to suits for retrospective monetary relief against state officials in their official capacity. Kentucky v. Graham, 473 U.S. 159, 169–70 (1985). This is because "a suit against a state official in his or her official capacity is . . . no different from a suit against the State itself." Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989).

Here, Judge Wheatcraft is an employee of the Pennsylvania judicial system. The United States Court of Appeals for the Third Circuit has held that all courts in Pennsylvania's judicial districts and the judges in their official capacity are entitled to Eleventh Amendment immunity. Lyman v. Phila. Ct. of Common Pleas Domestic Relations Div., 751 F. App'x 174, 178 n.4 (3d Cir. 2018) (citations omitted). As such, any claims for monetary damages against Judge Wheatcraft in her official capacity are barred and must be dismissed.

To the extent Plaintiff brings claims against Judge Wheatcraft in her individual capacity, the claims are precluded on two grounds. First, it is well settled that judges are immune from suit for monetary damages arising from their judicial acts. Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 768 (3d Cir. 2000). Only where the claims arise out of actions not taken in the judge's judicial capacity, or the acts—though judicial in nature—are taken in the complete absence of all jurisdiction does immunity not apply. Id.

Here, Plaintiff alleges that, in performing the pure judicial function of sentencing Plaintiff, Judge Wheatcraft imposed a term of incarceration, in lieu of home confinement, despite knowing that Plaintiff had physical impairments. This is precisely the type of claim barred by the doctrine of judicial immunity.

Second, Plaintiff's claims against Judge Wheatcraft are barred by the statute of limitations. Both § 1983 claims and ADA claims are subject to Pennsylvania's two-year state statute of limitations for personal injury actions. Ormsby v. Luzerne Cnty. Dep't of Public Welfare Office of Human Servs., 149 F. App'x 60, 62 (3d Cir. 2005); Disabled in Action of Pennsylvania v. Se. Pa. Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008). All of the events giving rise to the claims here occurred, at the latest, in November of 2020 when Plaintiff was released from prison, giving Plaintiff until November of 2022 to file suit. He did not do so until December 2022, rendering the claims against Judge Wheatcraft time barred.

F. **Leave to Amend**

Taking the Complaint's factual allegations as true and in the light most favorable to Plaintiff, I find that Plaintiff has failed to state a cognizable claim for relief against any Defendant. I note that a court must allow a *pro se* plaintiff to amend his or her complaint unless it would be inequitable or futile to do so. Philips v. Cnty of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008); Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

Having carefully reviewed Plaintiff's Complaint, however, I find that amendment of his claims would be futile. The dismissal of the Complaint does not rest on an absence of adequately pled facts. Rather, Plaintiff's claims are being dismissed because (a) they are barred by the doctrine of claim preclusion; (b) they are time-barred; (c) the Defendants are not entities subject to liability; (d) immunity applies; (e) the claims are not legally cognizable; or (f) Plaintiff has waived his claims. Plaintiff cannot cure these defects through an amended complaint. Moreover, I note that this Complaint is already Plaintiff's second attempt to bring these claims, having had a case based on identical facts previously

dismissed. Accordingly, I will dismiss Plaintiff's Complaint as to these Defendants in its entirety with prejudice.

      An appropriate Order follows.